**THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**

KHAWANDA BOYD,

        Plaintiff,

        v.

ONEONCOLOGY, LLC; John and Jane Does 1-30,

        Defendants.

Case No. 3:26-cv-00326

Judge Waverly D. Crenshaw, Jr.
Magistrate Judge Barbara D. Holmes

**DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND
SUPPORTING MEMORANDUM OF LAW**

**TABLE OF CONTENTS**

|  |  | Page |
|---|---|---|
| INTRODUCTION | | 1 |
| BACKGROUND | | 4 |
| I. | The Plan | 4 |
| II. | The American Century TDFs | 5 |
| III. | The Comparator Target Date Funds | 7 |
| IV. | Plaintiff Does Not Allege Any Personal Losses Arising from Her Investment in an American Century TDF, But Seeks to Recover Alleged Plan Losses | 8 |
| STANDARDS OF REVIEW | | 9 |
| ARGUMENT | | 10 |
| I. | The Complaint Should Be Dismissed for Lack of Article III Standing | 10 |
| II. | Plaintiff's Allegations Do Not State a Plausible Imprudent Investment Claim | 11 |
| | A. Allegations that other TDFs performed better cannot, without more, support a plausible imprudent investment claim under ERISA | 12 |
| | B. Plaintiff's failure to allege facts showing that her comparators are meaningful benchmarks for the American Century TDFs dooms her claim | 14 |
| | C. Plaintiff's underperformance allegations are insufficient to infer imprudence, even assuming her comparators were otherwise appropriate. | 18 |
| III. | Plaintiff's Derivative Failure-to-Monitor Claim Should Be Dismissed | 20 |
| CONCLUSION | | 21 |

i

**Page(s)**

**Cases**

*Abel v. CMFG Life Ins. Co.*,
  2024 WL 307489 (W.D. Wis. Jan. 26, 2024) ..........................................................................18

*Anderson v. Intel*,
  137 F.4th 1015 (9th Cir. 2025) ...............................................................................12, 13, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)............................................................................................................9, 17

*Davis v. Wash. Univ. in St. Louis*,
  960 F.3d 478 (8th Cir. 2020) .................................................................................................20

*Dawson v. Brookfield Asset Mgmt. LLC*,
  2026 WL 835553 (N.D. Ohio March 26, 2026) .............................................................. *passim*

*Dukes v. AmerisourceBergen Corp.*,
  2024 WL 4282309 (W.D. Ky. Sept. 24, 2024) ................................................................10, 11

*Duncan v. Muzyn*,
  885 F.3d 422 (6th Cir. 2018) ...................................................................................................9

*Fifth Third Bancorp v. Dudenhoeffer*,
  573 U.S. 409 (2014)...................................................................................................................9

*Forman v. TriHealth Inc.*,
  40 F.4th 443 (6th Cir. 2022) ............................................................................................ *passim*

*Hall v. Capital One Fin'l Corp.*,
  2023 WL 2333304 (E.D. Va. Mar. 1, 2023) .............................................................12, 15, 18

*Harmon v. FMC Corp.*,
  2018 WL 1366621 (E.D. Pa. Mar. 16, 2018)........................................................................20

*Hughes v. Nw. Univ.*,
  142 S. Ct. 737 (2022)......................................................................................................9, 17, 18

*Johnson v. Parker-Hannifin*,
  122 F.4th 205 (6th Cir. 2024) ...........................................................................................14, 18

Case 3:26-cv-00326   Document 20   Filed 05/18/26   Page 3 of 26 PageID #: 131

*Lujan v. Defs. of Wildlife*,
    504 U.S. 555 (1992)........................................................................................................9

*Lyshe v. Levy*,
    854 F.3d 855 (6th Cir. 2017) .........................................................................................9

*Matney v. Barrick Gold of N. Am.*,
    80 F.4th 1136 (10th Cir. 2023) ..............................................................................12, 16

*Matousek v. Mid-Am. Energy Co.*,
    51 F.4th at 281 ...........................................................................................................16

*Matula v. Wells Fargo & Co.*,
    __ F.4th __, 2026 WL 129325 ................................................................................10, 11

*Meiners v. Wells Fargo & Co.*,
    898 F.3d 820 (8th Cir. 2018) ...............................................................................3, 13, 16

*Miller v. Packaging Corp. of Am.*,
    2023 WL 2705818 (W.D. Mich. Mar. 30, 2023) .........................................................20

*Nicolas v. Trs. of Princeton Univ.*,
    2017 WL 4455897 (D.N.J. Sept. 25, 2017) ...............................................................20

*Patterson v. Morgan Stanley*,
    2019 WL 4934834 (S.D.N.Y. Oct. 7, 2019) ...............................................................11

*Phillips v. Cobham Advanced Elec. Sols., Inc.*,
    2025 WL 2689268 (N.D. Cal. Sept. 19, 2025) ................................................... *passim*

*Saumer v. Cliffs Nat. Res. Inc.*,
    2016 WL 8668509 (N.D. Ohio Apr. 1, 2016).............................................................20

*Smith v. CommonSpirit Health*,
    37 F.4th 1160 (6th Cir. 2022) ...................................................................... *passim*

*Spokeo, Inc. v. Robins*,
    578 U.S. 330 (2016)....................................................................................................10

*Thole v. U.S. Bank N.A.*,
    140 S. Ct. 1615 (2020)................................................................................................10

*TransUnion LLC v. Ramirez*,
    594 U.S. 413 (2021)....................................................................................................10

*Tullgren v. Hamilton*,
    2023 WL 2307615 ......................................................................................................18

**Statutes**

Employee Retirement Income Security Act of 1974 (“ERISA”) .......................................... *passim*

iv

Defendant OneOncology LLC ("OneOncology") respectfully moves this Court to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), as discussed below.

## INTRODUCTION

This is the latest copy-cat class action claiming that 401(k) plan fiduciaries breached their "duty of prudence" under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1104(a)(1)(B), by offering certain investment funds in the plan that generated smaller investment returns than some other alternatives available in the market. These claims have become a cottage industry in recent years, with the Sixth Circuit addressing them multiple times since 2022, and the Supreme Court poised to address them next term.

Plaintiff is a former participant in the OneOncology, LLC OneRewards Retirement Plan ("Plan"). The Plan is a tax-advantaged "401(k) plan" that allows OneOncology employees to save for retirement by investing both their own contributions and OneOncology's generous matching and profit-sharing contributions to their individual Plan accounts. Through the Plan, participants can select from a menu of more than thirty investment options vetted by the Plan's fiduciaries. Among those options was a suite of target date funds, or TDFs, known as the American Century Once Choice Target Date Funds ("American Century TDFs"). Target-date funds are popular investment options that allocate assets over time based on the investor's targeted retirement year. This lawsuit claims that the Plan fiduciaries should have replaced the Plan's American Century TDFs in 2020 or subsequent years due to their supposed "underperformance" relative to four "industry leading" TDFs as of 2018 and 2019. These claims fail as a matter of law for multiple reasons and should be dismissed.

To start, the Complaint should be dismissed under Rule 12(b)(1) because Plaintiff does not allege that she suffered a concrete injury giving rise to Article III standing. Plaintiff was employed by OneOncology for several months in 2023, and during that time she invested in an American

1

Century TDF. However, Plaintiff does not allege that her American Century TDF underperformed while she invested in it, let alone that she suffered any resulting losses to her Plan account. Plaintiff alleges only that the American Century TDFs "underperformed" as of 2018 and 2019, years *before* she ever invested in one. With no allegation that Plaintiff suffered any loss to her Plan account, she cannot establish Article III standing to pursue this lawyer-driven action, and thus the Court should dismiss the Complaint on jurisdictional grounds.

The Complaint also fails under Rule 12(b)(6). Plaintiff alleges that Plan fiduciaries breached their "duty of prudence" under ERISA. But the duty of prudence is rooted in conduct, not results. *Smith v. CommonSpirit Health*, 37 F.4th 1160, 1167 (6th Cir. 2022). And Plaintiff does not allege any deficiency in how the Plan fiduciaries conducted their investment process. Instead, she focuses exclusively on results, asking the Court to *infer* that the Plan fiduciaries must have employed an imprudent process when deciding to retain the American Century TDFs because they allegedly "underperformed" four "industry leading" TDFs. However, "disappointing performance by itself does not conclusively point towards deficient decision-making, especially when we account for 'competing explanations' and other 'common sense' aspects of long-term investments." *Smith*, 37 F.4th at 1167. As Chief Judge Sutton explained in *Smith*, prudent fiduciaries often retain investments during periods of underperformance, so "[m]erely pointing to another investment that has performed better in a five-year snapshot of the lifespan of a fund that is supposed to grow for fifty years does not suffice to plausibly plead an imprudent decision—largely a process-based inquiry—that breaches a fiduciary duty." *Id* at 1166.

That is especially true here, because Plaintiff has failed to allege any facts showing that the four alternative TDFs she identifies are "meaningful benchmarks" for the American Century TDFs. In *Smith*, the Sixth Circuit joined the Eighth Circuit in recognizing that a plaintiff who seeks to

2

establish an inference of imprudence based on comparative performance allegations must start by alleging facts plausibly showing that the comparator is a "meaningful benchmark" for the plan investment. *See id.* at 1167 (affirming dismissal for lack of such "building block" allegations); *Forman v. TriHealth Inc.*, 40 F.4th 443, 449 (6th Cir. 2022) (same). This "challenging pleading burden" requires more than alleging alternatives with "some similarities" to the plan investment. *Meiners v. Wells Fargo & Co.*, 898 F.3d 820, 822-23 (8th Cir. 2018). Instead, it requires facts showing that the comparators shared the same strategies, goals, objectives and risk profiles, such that they were "otherwise equivalent" to the challenged plan investment. *Forman*, 40 F.4th at 449.

Plaintiff alleges nothing of the kind. She merely alleges that the four TDFs to which she compares the American Century TDFs were "industry leading" alternatives. Compl. ¶ 67. She alleges no facts suggesting that any of these alternatives shared the same strategies, objectives, or risk profiles as the American Century TDFs. Nor can she. The American Century TDFs are materially distinct from Plaintiff's comparators, because they employ a "to retirement" glidepath strategy that utilizes only "actively managed" investment funds. None of Plaintiff's comparators employed the same strategy: three of them use an entirely different "*through* retirement" glidepath strategy, and the fourth eschews active management entirely by investing only in "*passively* managed" funds. The Sixth Circuit has held that the difference between active and passive investments *alone* renders any comparison between such TDFs meaningless at the pleadings stage. *Smith*, 36 F.4th at 1167-69. In short, Plaintiff's imprudent investment claims here are even more implausible than those the Sixth Circuit rejected in *Smith*.

Regardless, even if Plaintiff had identified a meaningful benchmark, the underperformance alleged is insufficient to support a plausible claim. For one thing, Plaintiff alleges only that the American Century TDFs underperformed over 3- and 5-year snapshots as of 2018 and 2019.

3

Nothing more. For another, the Complaint establishes that the American Century TDFs generally underperformed Plaintiff's comparators during these snapshots by less than 1.00%. Courts in this Circuit and elsewhere consistently hold that such modest underperformance is insufficient to support an imprudent-investment claim under ERISA. *See, e.g.*, *Dawson v. Brookfield Asset Mgmt. LLC*, 2026 WL 835553, at \*13-20 (N.D. Ohio March 26, 2026) (dismissing similar claims that fiduciaries imprudently retained American Century TDFs); *Phillips v. Cobham Advanced Elec. Sols., Inc.*, 2025 WL 2689268, at \*5-7 (N.D. Cal. Sept. 19, 2025) (same).

Finally, even when substantial underperformance relative to a meaningful benchmark is plausibly alleged—which Plaintiff has failed to do—it is just a "building block" of a potentially plausible claim; it does not "suffice[] alone" to state a claim. *Smith*, 37 F.4th at 1167. Here, Plaintiff is missing not only the necessary building-block allegations, but also the additional allegations needed to plausibly support a viable claim under ERISA.

For these reasons and as discussed below, the Court should dismiss the Complaint.

## BACKGROUND

### I. The Plan

The Plan is a defined-contribution 401(k) plan that offers retirement benefits to eligible OneOncology employees. Compl. ¶¶ 2, 14-17. A participant's benefit is determined by the amount of employer and employee contributions made to her account, and the market performance of her selected investments. *Id.* As of December 31, 2020, the Plan had total assets of $185 million. Ex. 1, 2020 Form 5500, Fin. Stmt., at 5. By the end of 2024, the Plan held $584.65 million in total assets. Ex. 2, 2024 Form 5500, Fin. Stmt., at 5. During that year alone, OneOncology contributed more than $40 million to participants' individual Plan accounts. *Id.* at 6.

In addition to the American Century TDFs, the Plan offered numerous investment options from many well-known investment managers, including Charles Schwab, BlackRock, Fidelity,

Vanguard, T. Rowe Price, JP Morgan, Columbia, and others. *See* Ex. 1, 2020 Form 5500, Fin. Stmt., at 12; Ex. 2, 2024 Form 5500, Fin. Stmt., at 15. These investments included both (low cost) passively managed funds and (higher cost) actively managed funds that spanned the risk-reward spectrum, providing a diverse range of assets and investment strategies. *See Forman*, 40 F.4th at 446. Plaintiff takes issue only with the American Century TDFs.

## II.     The American Century TDFs

The American Century TDFs are managed by American Century Investments. Compl. ¶ 29. Target-date funds, or TDFs, are popular investment options that allocate assets over time based on a specified target retirement date. *Id.* ¶ 27. Like other TDFs, the American Century TDFs cover a range of retirement dates in five-year increments or "vintages" (e.g., 2030, 2035, and so on). *Id.* ¶ 28. Each vintage represents an anticipated retirement year, so a 2040 TDF is for individuals who plan to retire in 2040. *Id.* Like other TDFs, the American Century TDFs are a "fund of funds," meaning each vintage "may be invested in differing proportions of . . . equity funds, bond funds, real estate funds, and money market funds." *Id.* ¶ 29.

"These asset classes can be further categorized generally as allocations to equities and allocations for fixed income." *Id*. Larger equity allocations (relative to fixed-income) within a TDF vintage signifies greater risk exposure, while smaller allocations signify lower risk exposure. *Id.* ¶¶ 30-32. Meanwhile, larger fixed-income allocations (relative to equities) signify lower risk and volatility, because bonds and other fixed-income assets are generally less volatile and therefore less risky than equities. *Id.* So, a TDF with an equity-to-fixed-income ratio of 90/10 (meaning 90% of assets invested equity and 10% in bonds or other fixed income) reflects a more aggressive "risk profile" than a TDF with an equity-to-fixed income ratio of 80/20. With all target-date funds, "[t]he asset mix between equity and fixed income shifts dynamically over time, becoming less risky over a person's working career and into retirement." *Id.* ¶ 33. "The transition from higher risk to lower

5

risk is often referred to as the glide path." *Id.*

There are two different TDF glidepath strategies: "to retirement" or "through retirement." Compl. ¶ 35. As the U.S. Department of Labor explains, "[i]t is important to know whether [the] glide[]path uses a 'to retirement' or a 'through retirement' approach," because this distinction impacts how the TDF will be managed over time. Ex. 3, U.S. Dep't. of Labor, *Target Date Retirement Funds – Tips for ERISA Plan Fiduciaries* (Feb. 2012), at 1. Under a "to retirement" glidepath, the TDF's equity exposure reduces gradually and reaches its most conservative point *at* the target retirement date. *Id*. In contrast, a "through retirement" glidepath even more gradually reduces equity exposure within each vintage, reaching its most conservative allocations *years after* the target retirement date. *Id*. As the same publicly available Morningstar reports the Complaint references and other cases confirm, the American Century TDFs used a "to retirement" glidepath. Ex. 4, Morningstar 2020 Target-Date Strategy Landscape, at 7; *Phillips*, 2025 WL 2689268, at *7 (recognizing American Century TDFs use a "to retirement" glidepath).

Target date funds are also "differentiated by whether they consist of index (passive) funds or active funds[.]" Compl. ¶ 37. Passively managed funds "simply track the stocks in, say, the S&P 500 or some other stock or bond index." *Forman*, 40 F.4th at 446. In contrast, actively managed fund managers try "to maximize returns in a variety of ways," including "buying and selling shares in companies based on predictions about future performance; identifying companies with long-term value; and hedging risk by determining the right balance of equities, bonds, and cash in a portfolio." *Id*. As other courts have recognized, the American Century TDFs invest only in actively managed funds. *See Dawson*, 2026 WL 835553, at *13 n.8.

Within their to-retirement glidepath and actively managed investment fund strategies, the American Century TDFs struck a conservative risk profile. They did so by allocating a lower

percentage of assets to equities relative to other TDFs.[1] *See Phillips*, 2025 WL 2689268, at *7 (noting American Century TDFs' "more conservative" equity allocations).

## III.     The Comparator Target Date Funds

Plaintiff compares the American Century TDFs to four alternatives: the American Funds Target Date Series ("American Funds TDFs"); the Vanguard Target Retirement Series ("Vanguard TDFs"); the T. Rowe Price Target Series ("T. Rowe Price TDFs"); and the BlackRock LifePath Index Series ("BlackRock TDFs"). Compl. ¶ 61. Specifically, Plaintiff compares the American Century TDFs to these alternatives based on 3- and 5-year investment returns and other metrics (e.g., Sharpe ratio) as of the end of 2018 and 2019. *Id.* ¶¶ 53, 67, 81-84, 94-96 & App'x A.

Plaintiff alleges that her comparator TDFs are "market leaders" that "outperformed most [TDF] alternatives." Compl. ¶ 61. But she alleges no facts about the strategies, goals, objectives, or risk profiles of these comparators. For example, she does not allege whether her comparators utilized a "to retirement" or "through retirement" glidepath strategy; whether they invest in "passively managed" funds, "actively managed" funds, or both; or whether their equity allocations across vintages reflect a more-aggressive or more-conservative risk profile overall.

Nevertheless, public information shows that, unlike the American Century TDFs, three of Plaintiff's comparators employ a "through retirement" glidepath strategy. Ex. 4, Morningstar 2020 Target-Date Strategy Landscape, at 7 (American Funds TDFs, Vanguard TDFs, and T. Rowe Price TDFs use a "through" strategy). Public information also shows that the American Funds and the T. Rowe Price TDFs hold actively managed funds, while the Vanguard and the BlackRock TDFs

---

[1] *See* Compl. ¶ 65 n.11 (citing American Century publication graphing their conservative glidepath relative to industry), https://www.americancentury.com/advisors/client-conversations/target-date-solutions/one-choice-target-date-portfolios/; *see also* Morningstar, "Mutual Fund Strategies Don't Belong on Trial" (Nov. 30, 2023), https://www.morningstar.com/columns/rekenthaler-report/mutual-fund-strategies-dont-belong-trial.

7

hold only passively managed funds.[2] Thus, none of Plaintiff's comparators employed the same investment strategy as the American Century TDFs, which use a *to retirement* glidepath strategy, an *actively managed* investment strategy, and strike a conservative risk profile. *See supra* at 5-7.

## IV.     Plaintiff Does Not Allege Any Personal Losses Arising from Her Investment in an American Century TDF, But Seeks to Recover Alleged Plan Losses.

Plaintiff worked for OneOncology for several months in 2023. Compl. ¶ 7; Declaration of Karah Pennington ("Pennington Decl.") ¶ 4. During this time, she participated in the Plan and invested in an American Century TDF. Compl. ¶ 9; Pennington Decl. ¶ 4. Plaintiff does not allege that her American Century TDF underperformed or that she suffered any resulting losses to her Plan account.

Instead, Plaintiff alleges that, as of "the end of 2018 and 2019," the American Century TDFs "consistently underperformed in 3- and 5-year returns" relative to her four comparator TDFs. Compl. ¶¶ 66-67, 81-84. Plaintiff makes no specific allegation about the performance of the American Century TDFs after 2019, let alone in 2023 when she invested in one. According to Plaintiff, if the American Century TDFs had been replaced in 2020 with one of her comparator TDFs, then the Plan's total TDF investment would be worth $1.9 million to $3.6 million more than the $183 million it was worth at the end of 2024. *See* Compl. ¶ 68; Ex. 2, 2024 Form 5500, Fin. Stmt., at 15 (reporting value of the Plan's investment in each American Century TDF, collectively totaling approximately $183 million). In other words, by not investing in one of her comparator TDFs, Plaintiff claims the Plan's returns were 1.03% to 1.97% lower than they could have been, representing "losses" to the Plan. Compl. ¶ 68.

---

[2] Ex. 6, American Funds Target Date Retirement Series Summary Prospectus (Jan. 1, 2026), at PDF p. 6; Ex. 7, T. Rowe Price Retirement Funds Summary Prospectus (Aug. 1, 2025), at PDF p. 6; Ex. 8, Vanguard Target Retirement Series Summary Prospectus (Jan. 28, 2026), at PDF p. 4; Ex. 9, BlackRock LifePath Index Series Summary Prospectus (Apr. 30, 2026), at PDF p. 6.

Plaintiff brings two claims under ERISA. First, she claims Plan fiduciaries breached their duty of prudence under 29 U.S.C. § 1104(a)(1)(B), by not replacing the American Century TDFs as early as 2020.[3] Compl. ¶¶ 124-135. Second, she claims that OneOncology breached its duty to monitor the Plan fiduciaries who decided to retain the American Century TDFs. *Id.* ¶¶ 136-141.

## STANDARDS OF REVIEW

**Rule 12(b)(1)**. Article III limits federal court jurisdiction to "Cases" and "Controversies." U.S. Const. art. III, § 2, cl. 1. There can be no case or controversy if a plaintiff lacks standing to sue. *See Duncan v. Muzyn*, 885 F.3d 422, 427 (6th Cir. 2018) (citing *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)). Article III standing requires the plaintiff to establish an injury in fact that is fairly traceable to the defendant's alleged misconduct and is able to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). When a plaintiff fails to plausibly allege standing in her complaint, a court must dismiss the complaint (or claim) for lack of subject-matter jurisdiction. *Lyshe v. Levy*, 854 F.3d 855, 857 (6th Cir. 2017).

**Rule 12(b)(6)**. In assessing ERISA breach-of-fiduciary-duty claims under Rule 12(b)(6), courts must apply the pleading standards described in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), "giv[ing] due regard to the range of reasonable judgments a fiduciary may make based on her experience and expertise." *Hughes v. Nw. Univ.*, 142 S. Ct. 737, 742 (2022). Courts must engage in "careful, context-sensitive scrutiny of a complaint's allegations," free from hindsight, to "divide the plausible sheep from the meritless goats." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 425 (2014). As the Supreme Court has recognized, Rule 12(b)(6) is an "important mechanism for weeding out meritless claims" for breach of fiduciary duty under ERISA. *Dudenhoeffer*, 573 U.S. at 425.

---

[3] The American Century TDFs were replaced in 2025. Ex. 5, Investment Change Notice at 2. The Court may consider such Plan disclosures at the pleadings stage. *See Smith*, 37 F.4th at 1168.

**ARGUMENT**

**I.      The Complaint Should Be Dismissed for Lack of Article III Standing**

To plead Article III standing, Plaintiff must allege facts showing she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. The Complaint flunks these requirements on its face, because it contains no allegation that Plaintiff suffered any losses or other injury to her Plan account resulting from the American Century TDFs.

"There is no ERISA exception to Article III." *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1622 (2020). Even where a plaintiff plausibly alleges an ERISA violation, if she "does not claim [personally] to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). The injury-in-fact element requires a plaintiff to show that she personally "suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo,* 578 U.S. at 339 (citations omitted). This is true even where the plaintiff alleges a claim "on behalf of" an ERISA plan and alleges harm to the plan as a whole. *Thole*, 140 S. Ct. at 1620 (rejecting argument that plaintiff has representational standing under ERISA, even in the absence of a personal injury). Likewise, class-action allegations "add[] nothing to the question of standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong." *Id*. at 338 n.6.

Applying these principles, courts regularly dismiss imprudence claims where the named plaintiff fails to allege any personal losses to her plan account resulting from the challenged conduct. *See, e.g.*, *Dukes v. AmerisourceBergen Corp.*, 2024 WL 4282309, at \*5-6 (W.D. Ky. Sept. 24, 2024); *Matula v. Wells Fargo & Co.*, \_\_ F.4th \_\_, 2026 WL 129325, at \*2 (affirming dismissal

10

on Article III standing grounds because plaintiff did "not allege any actual injury to [his] plan account," but only to the plan as a whole); *Patterson v. Morgan Stanley*, 2019 WL 4934834, at *5 (S.D.N.Y. Oct. 7, 2019) (no Article III standing to challenge investments for which plaintiff alleged no personal injury). In *Dukes*, for example, the plaintiff alleged that an investment underperformed in 2017-2022, but not that it underperformed in 2023 when the plaintiff invested in it. 2024 WL 4282309, at *5. As a result, the plaintiff "failed to allege a cognizable injury-in-fact" and the court properly dismissed the claim on jurisdictional grounds. *Id.*

The same analysis applies here. Although Plaintiff alleges that the American Century TDFs underperformed four "industry leading" TDFs as of 2018 and 2019, Compl. ¶¶ 66-68, 81-84, 90-97, she does not allege that they underperformed years later when she briefly worked at OneOncology, participated in the Plan, and invested in an American Century TDF, *see id.* ¶¶ 7-9; *supra* at 8-9. Similarly, while Plaintiff suggests that the Plan suffered total "losses" ranging from 1.03% to 1.97% of its total TDF investment by the end of 2024, *see* Compl. ¶ 68; *supra* at 8-9, this cannot excuse her failure to allege any *personal* losses to her individual Plan account. *See Dukes*, 2024 WL 4282309, at *5; *Matula*, 2026 WL 1293295, at *2. Accordingly, the Court should dismiss the Complaint under Rule 12(b)(1) for lack of Article III standing.

## II. Plaintiff's Allegations Do Not State a Plausible Imprudent Investment Claim

Even if Plaintiff had standing, her allegations do not state a viable claim under ERISA. To do so, Plaintiff must plausibly allege that the Plan fiduciaries failed to act "with the care, skill, prudence, and diligence under the circumstances then prevailing" that a prudent person would use. 29 U.S.C. § 1104(a)(1)(B). This "prudent person" standard focuses on the fiduciary's "real-time decision-making process, not on whether any one investment performed well in hindsight." *Forman*, 40 F.4th at 448. Plaintiff must either allege facts directly challenging the Plan fiduciary's process, or facts from which the Court can reasonably infer the process was imprudent. *See id.* at

11

449; *Smith*, 37 F.4th at 1165. Here, Plaintiff takes the latter approach, but to no avail.

**A.     Allegations that other TDFs performed better cannot, without more, support a plausible imprudent investment claim under ERISA**

Plaintiff asks the Court to infer that the Plan fiduciaries imprudently retained the American Century TDFs based on allegations that the funds underperformed four "industry leading" TDFs as of 2018 and 2019. Compl. ¶¶ 53, 67, 81-84, 94-96 & App'x A. However, the Sixth Circuit has repeatedly emphasized that "simply pointing to a fund with better performance" cannot support an imprudent investment claim, *Smith*, 37 F.4th at 1166-67, because "[d]isappointing performance in the near term and higher costs do not by themselves show 'deficient decision-making, especially when we account for competing explanations and other common sense aspects of long-term investments[,]'" *Forman*, 40 F.4th at 449; *see also, e.g.*, *Anderson v. Intel*, 137 F.4th 1015, 1021 (9th Cir. 2025), *cert. granted*, No. 25-498 (U.S. Jan. 16, 2026) ("[I]t is not enough for a plaintiff simply to allege that the fiduciaries could have obtained better results—whether higher returns, lower risks, or reduced costs—by choosing different investments."); *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1154 n.15 (10th Cir. 2023) ("imprudence cannot be inferred based solely on allegations identifying. . . better performing alternative funds").

As these precedents recognize, numerous variables cause TDFs to perform differently over time. Some TDFs follow a "*to* retirement" glidepath, meaning their asset allocations will vary differently over time than TDFs that follow a "*through* retirement" glidepath strategy. *See supra* at 5-8; *Hall v. Capital One Fin'l Corp.*, 2023 WL 2333304, at *3, *6 (E.D. Va. Mar. 1, 2023). Similarly, some TDFs invest in *actively managed* funds, aiming to outperform a stated market index, while others use *passive investments*, with goal of reducing costs while simply meeting (not beating) the index. *Smith*, 37 F.4th at 1163 & 1166. Further, some TDFs strike an *aggressive* risk profile, investing heavily in equities, thereby increasing risk and potential return along their

glidepath, while others strike a more *conservative* profile, cabining equity exposure with the goal of producing steadier, if smaller, returns over the long haul. *See Anderson*, 137 F.4th at 1024; *Phillips*, 2025 WL 2689268, at \*5.

While all of these differences will yield different investment results among TDFs, it does not follow that those with lower returns were imprudent investments. *See Smith*, 37 F.4th at 1166 ("Comparing apples and oranges is not a way to show that one [TDF] is better or worse than the other."); *Meiners*, 898 F.3d at 823 ("The fact that one fund with a different investment strategy ultimately performed better does not establish anything about whether the [plan] TDFs were an imprudent choice at the outset."). Nor does it follow that any prudent fiduciary would precipitously dump an "underperformer" to chase higher returns with some other TDF that, in hindsight, performed better over some period. *See, e.g., Smith*, 37 F.4th at 1166 ("Precipitously selling a well-constructed portfolio in response to disappointing short-term losses, as it happens, is one of the surest ways to frustrate the long-term growth of a retirement plan."); *Phillips*, 2025 WL 2689268, at \*5 ("In years when the equity market is hot, a more aggressive target date fund that retains equities longer will appear to outperform a fund that shifts toward more conservative assets like bonds sooner. But that snapshot does not mean it is objectively imprudent to adopt a more conservative strategy – the tables turn when the market is down." (quotations omitted)).

For these same reasons, the Sixth Circuit and other courts hold that a plaintiff cannot state an imprudent-investment claim by simply identifying other TDFs that performed better. Such an approach fails to "account for 'competing explanations' and other 'common sense' aspects of long-term investments." *Smith*, 37 F.4th at 1167. In short, a simple "side-by-side comparison of how two funds performed in a narrow window of time, *with no consideration of their distinct objectives*, will not tell a fiduciary which is the more prudent long-term investment option." *Id.* (emphasis

13

added). Because such comparison is all Plaintiff offers here, her allegations fail to state a claim.

This is not to say a plaintiff can *never* support an imprudence claim based on comparative performance allegations. The Sixth Circuit has recognized that such allegations "may provide a building block" for a viable claim, *Smith*, 37 F.4th at 1167, but only if the comparators "provide a sound basis for comparison—a meaningful benchmark" for the challenged plan investment, *Forman*, F.4th at 451; *Smith*, 37 F.4th at 1167.[4] However, as discussed below, Plaintiff has failed to make any such allegations, thus confirming that her Complaint should be dismissed.

**B.      Plaintiff's failure to allege facts showing that her comparators are meaningful benchmarks for the American Century TDFs dooms her claim**

For Plaintiff's performance comparisons to move the needle toward a viable claim, she needed to plausibly allege, as a necessary first step, that her comparator TDFs are meaningful benchmarks for the American Century TDFs. *See Smith*, 37 F.4th at 1167 (noting a "'meaningful benchmark' may offer a *building block* for a claim of imprudence" (emphasis added)). This required Plaintiff to allege facts showing that her comparators share the same "investment strategy," "goals," "objectives," and "risk profiles" as the American Century TDFs, *id.* at 1167-68—in other words, that apart from performance, her comparators are "otherwise equivalent to the selected funds." *Forman*, 40 F.4th at 449. Plaintiff has not even tried to do so.

For example, while Plaintiff alleges that TDFs follow one of two glidepath strategies—"to retirement" and "through retirement"—she never alleges which strategy her comparators or the American Century TDFs followed. *See supra* at 5-8; Compl. ¶ 35. Similarly, while Plaintiff alleges

---

[4] In *Johnson v. Parker-Hannifin*, 122 F.4th 205, 216 (6th Cir. 2024), *cert. pending*, 24-1030 (U.S. filed Mar. 26, 2025), the Sixth Circuit noted that a meaningful benchmark may not be needed in all imprudent-investment cases, before concluding that the plaintiff had plausibly alleged one. But where, as here, Plaintiff's claim depends on *comparative* performance relative to other investments, a meaningful benchmark is needed. *See, e.g., Smith*, 37 F.4th at 1167-68; *Forman*, 40 F.4th at 449.

that TDFs differ based on whether they invest in actively or passively managed funds, *see supra* at 5-8; Compl. ¶ 37; *Smith*, 37 F.4th 1166-67, she never alleges which of these distinct strategies her comparators or the American Century TDFs utilized. And while Plaintiff acknowledges that TDF risk profiles will vary depending on the balance they strike between equity investments, on the one hand, and fixed-income investments, on the other hand, *see* Compl. ¶¶ 28-33, she alleges nothing about her comparators' risk profiles, let alone how they compare to that of the American Century TDFs. In sum, Plaintiff is "silent on whether the [c]omparator TDFs use 'through' or 'to' retirement glidepaths; whether the [c]omparator TDFs invest in actively managed or passively managed underlying funds; or how the [c]omparator TDFs' underlying equity and bond funds are allocated among the types and categories of possible equity and bond funds." *Hall v. Cap. One Fin. Corp.*, 2023 WL 2333304 at *6 (E.D. Va. Mar. 1, 2023).

This dooms Plaintiff's claims under binding precedent. In *Smith*, the Sixth Circuit affirmed the dismissal of claims that defendants imprudently offered Fidelity TDFs that invested in *actively* managed funds, rather than less-expensive, better-performing Fidelity TDFs that invested in *passively* managed funds. 37 F.4th at 1167-69. While the Sixth Circuit recognized that both options were "sponsored by the same company [Fidelity], managed by the same team, and use[d] a similar [asset] allocation," it concluded that their different approach to active and passive investments meant that the funds had "distinct goals and strategies, making them inapt comparators." *Id.* at 1167. Similarly, in *Forman*, the Sixth Circuit affirmed dismissal because plaintiffs failed to allege that, apart from performance, their alleged comparators "were otherwise equivalent to the" challenged plan investments. 40 F.4th at 449. Here, Plaintiff's claims are even more deficient than those in *Smith* and *Forman*, because she alleges nothing to suggest that her comparators had the same investment strategies, goals, and risk profiles as the American Century TDFs, or indeed that

15

they shared *any* similarity to the American Century TDFs beyond the label "target date fund." *See Matousek v. Mid-Am. Energy Co.*, 51 F.4th at 281 ("With so little information, we have no way of knowing whether the peer-group funds provide a 'sound basis for comparison.'").

Presumably, Plaintiff has not attempted such allegations because public information and other cases demonstrate that her comparators are nothing close to meaningful benchmarks for the American Century TDFs. *See supra* at 5-8; *Dawson*, 2026 WL 835553, at *13-19; *Phillips*, 2025 WL 835553, at *5-9. These sources confirm that the American Century TDFs have a "to retirement" glidepath strategy, invest only in actively managed funds, and maintain a conservative risk profile. *See supra* at 5-6. Plaintiff cannot say the same about any of her comparators: three use an entirely different "*through* retirement" glidepath strategy (Vanguard TDFs, T. Rowe Price TDFs, American Funds TDFs), two invest only in *passively* managed funds (Vanguard TDFs and BlackRock TDFs), and *none* is alleged to maintain a conservative risk profile. Thus, Plaintiff cannot plausibly allege that any of her comparators are meaningful benchmarks, even if she tried. *See, e.g.*, *Forman*, 40 F.4th at 449 (affirming dismissal because plaintiffs "do not plausibly plead that these available alternatives were otherwise equivalent to the [challenged] funds"); *Smith*, 37 F.4th at 1167 (distinction between active and passive investments alone rendered plaintiff's alternative TDFs "inapt comparators"); *Matney*, 80 F.4th at 1154 n.14 (through-retirement TDFs not meaningful benchmarks for to-retirement TDFs); *Meiners*, 898 F.3d at 823 & n.2 (comparator TDFs were not meaningful benchmarks because the plan's TDFs held a greater percentage of bonds); *Phillips*, 2025 WL 2689268, at *7 (through-retirement TDFs and TDFs with more aggressive risk profiles were not meaningful benchmarks for the American Century TDFs).

That is why Plaintiff tries a different approach. Instead of alleging facts showing that her comparators are meaningful benchmarks for the American Century TDFs, she simply asserts that

16

"prudent" fiduciaries must evaluate any TDF against her comparators based on their performance and predominate market share, and regardless of their distinct investment strategies, objectives, or risk profiles. *See* Compl. ¶¶ 43-44. These allegations are legal conclusions masquerading as facts, and the Court should disregard them. *See Twombly*, 550 U.S. at 565. Either way, Plaintiff's allegations are foreclosed by *Smith* and *Forman*, which rejected the notion that imprudence can be inferred by comparing TDFs without regard to their particular strategies, goals, or risk profiles. *Smith*, 37 F.4th at 1166-67; *Forman*, 40 F.4th at 448-49.

Moreover, Plaintiff's approach is legally untenable. If permitted, it would mean that any fiduciary who selects a TDF that is not among the most popular options available in the market can be sued for violating ERISA and subjected to class action discovery, unless the selected TDF continually outperforms the more popular options over every 3- or 5-year snapshot. Not only is this approach at odds with *Smith*, where the Sixth Circuit rejected a "rule [that] would mean that every actively managed fund with below-average results over the most recent five-year period would create a plausible ERISA violation," 37 F.4th at 1166, but it contradicts the requirement that courts "give due regard to the *range of reasonable judgments* a fiduciary may make based on her experience and expertise," *Hughes*, 142 S. Ct. at 742 (emphasis added). Simply put, there is no fiduciary duty to offer only the most popular and best-performing TDFs, so allegations that plan fiduciaries failed to do so cannot support a viable claim under ERISA.

Finally, it makes no difference that Plaintiff's comparisons include other performance metrics (e.g., Sharpe ratios) beyond investment returns. *See* Compl. ¶¶ 52-53, 66-67, 81-84. Absent a meaningful benchmark, courts hold that such additional metrics are immaterial. For example, the plaintiff in *Anderson* alleged that the plan's TDFs had "greater 'risk per unit of return' than did other TDFs" based on their respective Sharpe ratios. 137 F.4th at 1025. But the Ninth Circuit easily

17

rejected this allegation, because an "ERISA plaintiff cannot make incomparable funds comparable simply by using a ratio." *Id.*; *see also, e.g.*, *Phillips*, 2025 WL 2689268, at *7; *Hall*, 2023 WL 2333304, at *6; *Tullgren v. Hamilton*, 2023 WL 2307615, at *4-5.[5] So too here.

### C.     Plaintiff's underperformance allegations are insufficient to infer imprudence, even assuming her comparators were otherwise appropriate.

Even if the Complaint alleged "meaningful benchmarks" for the American Century TDFs, Plaintiff's own allegations belie her claim that the American Century TDFs' performance was so bad that the decision to offer them fell outside the "range of reasonable judgments a fiduciary may make[.]" *Hughes*, 142 S. Ct. at 742. This is yet another reason Plaintiff's claims fail.

To start, the Complaint focuses myopically on short-term returns. Plaintiff compares the American Century TDFs' performance in 2018 and 2019 "against the modestly better performances by [c]omparator TDFs during a select group of three- and five-year trailing averages." *Abel v. CMFG Life Ins. Co.*, 2024 WL 307489, at *5 (W.D. Wis. Jan. 26, 2024). But TDFs "are generally intended to grow for decades," meaning "a prudent fiduciary may—and often does—retain investments through a period of underperformance as part of a long-range investment strategy, and will not necessarily reflexively jettison investment options in favor of the prior year's top performers because past performance is no guarantee of future success." *Id.* (quoting *Gonzalez v. Northwell Health, Inc.*, 632 F. Supp. 3d 148, 163 (E.D.N.Y. 2022)); *see also Smith*, 37 F.4th at 1167. In other words, Plaintiff's theory that the Plan fiduciaries should have dumped the American Century TDFs based on their three- and five-year trailing returns in 2018 and 2019 is implausible and contradicts prudent fiduciary practice.

---

[5] Plaintiff's "turnover ratio" comparisons do not move the needle. The alleged turnover ratio for the American Century TDFs was quite low and never exceeded 27%, and only slightly exceeded the turnover percentages comparator TDFs when it did at all. *See* Compl. Appx. A at ECF pp. 2-13. The American Century TDFs had nothing near the concerning 90% turnover alleged in *Johnson v. Parker-Hannifin*. *See Dawson*, 2026 WL 835553, at *19-20.

18

Further, Plaintiff's own allegations show that the American Century TDFs only slightly underperformed the "industry leading" TDFs to which she compares them. To infer imprudence, "the underperformance must be substantial." *Dawson*, 2026 WL 835553, at \*15 (quotations and citation omitted). Thus, courts "throughout the country have found that underperforming by only one, two or even three percentage points is insufficient to infer imprudence at the pleading stage." *Id.* (collecting cases). Indeed, the court in *Dawson* recently dismissed similar claims that plan fiduciaries imprudently offered the *same* American Century TDFs at issue here, because, even assuming the plaintiff had provided a meaningful benchmark, the funds underperformed the plaintiff's comparators by only a few percentage points. *See id.* at \*15-16.

That same result is appropriate here. For example, Plaintiff's "Appendix A" shows that the American Century TDFs underperformed the T. Rowe Price TDFs, the Vanguard TDFs, and the BlackRock TDFs by *less than 1.00% in most periods alleged*, and never underperformed them by more than 1.73%. Compl. App'x. A at ECF pp. 15-53. Especially given that these comparators are allegedly top-performing and "industry leading" TDFs, Compl. ¶¶ 43, 44, 56, 57, 67, 69, 76, 85, 87, 88, 92, allegations that the American Century TDFs generally underperformed them by less than 1.00% foreclose any plausible inference "that a prudent plan administrator should have . . . precipitously dumped them." *Smith*, 37 F.4th at 1168. Rather, as in *Dawson*, "such modest underperformance is insufficient to infer imprudence." 2026 WL 835553, at \*16.

Finally, even when, unlike here, a plaintiff alleges substantial underperformance against a meaningful benchmark, more is needed to state a claim. While such underperformance "may be a building block for a claim of imprudence," it does not "suffice[] alone." *Smith*, 37 F.4th at 1167. Instead, more is needed to move a claim of imprudence across the line from possible to plausible, such as some "serious signs of distress" within the challenged investment. *Id.* at 1167-68; *see, e.g.*,

19

*Davis v. Wash. Univ. in St. Louis*, 960 F.3d 478, 486 (8th Cir. 2020) ("[E]ven if one of these [better performing] . . . funds were an appropriate benchmark, the complaint fails to connect the dots in a way that creates an inference of imprudence. . . . [F]iduciaries are not required to pick the *best* performing fund. . . . The bottom line is that there is simply not enough in the complaint to infer that a reasonably prudent fiduciary would have refused to stick with [the challenged plan investment]." (quotations omitted)). Not only does Plaintiff fail to allege anything like that here, but that the Plan fiduciaries replaced the American Century TDFs in 2025 confirms they "fulfilled their duty to monitor" the funds. *Smith*, 37 F.4th at 1169. For these additional reasons, Plaintiff's imprudent-investment claim in Count I should be dismissed.

## III. Plaintiff's Derivative Failure-to-Monitor Claim Should Be Dismissed

In Count II, Plaintiff alleges that OneOncology failed to prudently monitor the Plan fiduciaries who decided to retain the American Century TDFs in the Plan. Compl. ¶¶ 136-41. Because this claim is entirely derivative of Plaintiff's predicate imprudent-investment claim in Count I, it fails for same reasons discussed above. *See, e.g.*, *Miller v. Packaging Corp. of Am.*, 2023 WL 2705818, at *12 (W.D. Mich. Mar. 30, 2023) ("Because [plaintiff] fails to state a claim in Count 1 . . . , he necessarily fails to state a claim . . . regarding [the employer's] alleged failure to monitor the [c]ommittee [d]efendants."); *Saumer v. Cliffs Nat. Res. Inc.*, 2016 WL 8668509, at *8 (N.D. Ohio Apr. 1, 2016) (same), *aff'd*, 853 F.3d 855, 865 (6th Cir. 2017).

Plaintiff's claim in Count II also fails on its own terms because it rests entirely on legal conclusions, without any factual allegations about OneOncology's process for monitoring the Plan's fiduciaries, or how that process was deficient. *See*, *e.g.*, *Harmon v. FMC Corp.*, 2018 WL 1366621, at *5 (E.D. Pa. Mar. 16, 2018) (explaining that such a claim "falls short" where it "offers no direct allegations of flaws in [d]efendants' process"); *Nicolas v. Trs. of Princeton Univ.*, 2017

20

WL 4455897, at *5 (D.N.J. Sept. 25, 2017) (similar); *Romero v. Nokia*, Inc., 2013 WL 5692324, at *5 (N.D. Cal. Oct. 15, 2013) (similar).

## CONCLUSION

For the above reasons, Defendants respectfully requests that the Court dismiss the Complaint in its entirety, under Rule 12(b)(1) or Rule 12(b)(6).

*/s/ Christopher J. Boran*
Christopher J. Boran (pro hac vice)
**MORGAN, LEWIS & BOCKIUS LLP**
110 North Wacker Drive, Suite 2800
Chicago, IL 60606
Tel: (312) 324-1000
christopher.boran@morganlewis.com

Sean McMahan (pro hac vice)
**MORGAN, LEWIS & BOCKIUS LLP**
1717 Main Street, Suite 3200
Dallas, TX 75201
Tel: (212) 466-4102
sean.mcmahan@morganlewis.com

Jared R. Killeen (pro hac vice)
**MORGAN, LEWIS & BOCKIUS LLP**
2222 Market Street
Philadelphia, PA 19103
Tel: (215) 963-5478
jared.killeen@morganlewis.com

Allison Wiseman Acker (TN #036501)
**BASS BERRY & SIMS PLC**
21 Platform Way South, Suite 3500
Nashville, TN 37203
Tel: (615) 742-7895
allison.acker@bassberry.com

*Counsel for Defendants*

21